STANLEY RAPCZYNSKI, complainant,

*v.*

EAGLE INVESTMENT COMPANY, a corporation, defendant.

[Decided April 11th, 1934.]

*Mr. James L. McKeon,* for the complainant, and for the defendants Edward Rapczynski, Anna Rapczynski and Edward Construction Company.

*Mr. Russel E. Greco,* for the defendant.

EGAN, V. C.

The defendant, Eagle Investment Company, owns the following: "A certain tract or parcel of land located in the town of Kearny, county of Hudson, and State of New Jersey, being more particularly known as westerly half of lots Nos. 23 and 24, block 14 of Kearny Manor."

On May 25th, 1931, it entered into a written agreement with Edward Construction Company, a corporation of New Jersey, under the terms of which the said company was to erect upon said land for it a two-family house and a one-car block garage; upon the completion of the same, it, the Eagle Investment Company, would then assign, or convey, a one-half undivided interest in the said land to the said construction company. The building was erected and is known as No. 80 Highland avenue.

On July 18th, 1933, in consideration of one dollar, the Edward Construction Company transferred to complainant its interest in the contract. The complainant wants a one-half interest in the property, but the Eagle Investment Company refuses to convey it to him, and he seeks by these proceedings to compel the observance of the said agreement. The investment company admits the execution of the agreement with the construction company, but in its amended answer alleges that the said agreement was abandoned, and that a prior agreement, dated December 1st, 1930, with Edward Rapczynski, was the one under which the said building was erected and that, therefore, the said construction company's assignee, the complainant, is not entitled to any interest in the said land or building.

The investment company also filed a counter-claim and made said Edward Rapczynski and Anna Rapczynski, his wife, and Edward Construction Company defendants. It says that on or about July 8th, 1931, Rapczynski completed the building and became entitled to a deed for his one-half share in the premises, but it will not perform under the contract because it holds these following claims against Rapczynski: "a judgment obtained by Joseph Kulpa on July 3d, 1933, in the Hudson county circuit court against him in the sum of $1,059.93 damages, and $54.02 costs, which judgment on July 15th, 1933, was assigned to it; that on March 20th, 1933, Rapczynski became, or was, indebted to one Anarsio Amabile in the sum of $227.71, for which he gave his promissory note dated March 20th, 1933, payable September 20th, 1933, which note, on or about July 15th, 1933, was endorsed over to it, and remains unpaid; that on June 1st, 1933,

Rapczynski became indebted to Russel E. Greco in the sum of $288.74, which claim Greco assigned to it on October 11th, 1933;" and that upon the payment of these several amounts, it will convey a one-half undivided equal interest in the said lands and premises to Rapczynski, or his assigns. These claims became due approximately two years, or close to that, after the building was completed.

It appears that the Edward Construction Company was incorporated by, and upon the advice of the said Greco, who was legal adviser to Rapczynski; he is also president and counsel of the defendant investment company; that upon its incorporation, Rapczynski was made its president, and Anthony C. Okuniewicz its secretary. Okuniewicz is also the secretary of the defendant investment company. Okuniewicz, testifying on behalf of the investment company, said that all payments for the labor and material used in the construction of the buildings were made by checks to the order of Rapczynski, and that the work of construction was started by Rapczynski, under his contract, in December, 1930.

Rapczynski testified that the work of construction was not done under his contract, but under the contract of May 25th, 1931, with the construction company, and that the work, under it, began within a few days after the execution of the latter contract.

The investment company, in support of its contention, offered in evidence checks to the order of Rapczynski showing payments on July 8th, 1931, for the sum of $5,323.59, and, on the same day, one for $546.40. Okuniewicz testified that after the completion of the building and its rental, from the rents collected by him, after deducting expenses, he gave checks to the order of Rapczynski for his share of the rents.

Okuniewicz, in explanation of the execution of the Edward Construction Company contract, testified, in effect, that the construction company was incorporated because Rapczynski had gone to Poland and there married, and that if the title, or a part of it, to the said premises became vested in him it would then be subject to Rapczynski's wife's dower interest. That condition, I gather, the officers of the investment company did not welcome and, to avoid it, the incorporation of

the construction company followed. It is the direct result of their plan; it was their thought, and the corporation is the product of it. The reason for it continued to exist and does not appear to have ceased at any time. If Rapczynski's marital status, actual or contemplated, prompted the investment company and its officers to enter into the agreement with the construction company, there does not appear to have been any subsequent change in it to have warranted an abandonment or repudiation of the agreement. I find no evidence of a rescission of the construction company agreement entered into some five months after the making of the Rapczynski contract.

I believe the actions of all the parties not only suggests, but compels, the inference that the building was erected under the construction company's contract, and such conclusion, in my opinion, will not do violence either to the facts or the logic of the situation. My observation of all the testimony and the attitude and conduct of the several witnesses forces this decision. Why did the parties go through the formality of drawing and executing a second contract if the first one were to prevail? No reason appears to sustain such action. *Riehl* v. *Riehl, 101 N. J. Eq. 15; 137 Atl. Rep. 787.*

The fact that the checks to cover the building costs were made to the order of Rapczynski, individually, and not as president of the construction company, I do not consider significant, because the methods of business observed by all the parties to these proceedings were loose and not according to the best standards, a sort of "hit and miss" management. Harmony prevailed until the building was completed and the defendant investment company was called upon to convey a one-half interest in the premises. It hesitated; it waited, it delayed. Then when almost two years elapsed after the completion of the building, it seems to have scurried about and collected claims and judgments rendered against Rapczynski, and had them assigned to it, and sets up those claims as a justification for retaining the entire title. I do not believe its motives have been, in the least, altruistic. If Rapczynski can be made to appear interested in the title to the premises, then his interest would be affected by his debts held by the

investment company. I believe that is the thought in the minds of the officers of the investment company, and I think it pervaded and biased their testimony.

Greco, defendant investment company's president and counsel, and Okuniewicz, its secretary, and erstwhile secretary of the construction company, are responsible for the anomalous situation. Greco, trained in the law, took a leading part in the proceedings surrounding the transaction; likewise Okuniewicz, a realtor, educated, intelligent and wide awake; while Rapczynski, a foreigner, dull in manner, speaks English with evident difficulty, was, in my opinion, guided and controlled by the officers of the investment company—they made "the bed for him to lie in" and he meekly and confidently followed their directions. Equity does not tolerate a surreptitious advantage where there was a reposing of trust and confidence by one in the other. *Forman* v. *Grant Lunch Corp., 113 N. J. Eq. 175; 166 Atl. Rep. 219.*

The determining point is: Under what contract was the house built, Rapczynski's or the Edward Construction Company's? I believe it was the construction company's.

The investment company contends that Stanley Rapczynski's interest in the Edward Construction Company's contract was voluntarily acquired and without payment of adequate, or any consideration. Complainant, called by the defendant investment company, testified that he paid $600 for the assignment, or interest, and there was other testimony to the effect that he had paid a valuable consideration. His purchase of the construction company's interest was made under the supervision of his counsel, his solicitor in these proceedings. His testimony remains uncontradicted. The investment company having called the complainant as its witness is bound by his testimony. *Carluccio* v. *Winter, 108 N. J. Eq. 174; 154 Atl. Rep. 427; Krafte* v. *Belfus, 114 N. J. Eq. 207: 168 Atl. Rep. 755.*

The fact that the Edward Construction Company was incorporated and organized by counsel for the defendant, and its secretary was also the secretary of the defendant, Eagle Investment Company, and the further fact that both agreements were prepared and drawn by the same counsel, is sig-

nificant and cannot be overlooked. The collection and acquisition of the several claims against Rapczynski by the defendant company may be evidence of business acumen, but it smacks of sharp practice and creates a bad taste. Of course, if the building were erected by Rapczynski, these claims undoubtedly would be a lien against his interest, if any, in the premises.

I am of the opinion that the conveyance or assignment by the Edward Construction Company to the complainant, Stanley Rapczynski, has not been shown to have been fraudulent, and that his interest in the contract is based upon a good and adeqate consideration.

There is no evidence whatever to indicate that at the time of the assignment of the contract by the Edward Construction Company to the complainant that the said company thereby became or was insolvent. *Conway* v. *Raphel, 102 N. J. Eq. 531; 141 Atl. Rep. 804; Kearny Plumbing Supply Co.* v. *Gland, 105 N. J. Eq. 723; 149 Atl. Rep. 530.*

I shall advise a decree requiring the defendant, the Eagle Investment Company, to specifically perform the terms of the said agreement entered into by it with the Edward Construction Company, and deliver a deed for a one-half undivided interest in said premises to the complainant.