The case was submitted upon an agreed state of facts. Samuel Cherish conveyed a tract of land to Middlesex Roadside Rest, Incorporated, a corporation formed by him for that purpose. The corporation graded the tract and erected several houses. Upon a bill filed by the Standard Oil Company, a judgment creditor of Cherish, the conveyance was set aside as fraudulent and the property ordered sold to make the money. Thereupon, creditors of the Middlesex Roadside Rest, Incorporated, filed a bill and obtained a decree declaring the corporation insolvent and a receiver was appointed, who filed the present bill to fasten upon the proceeds of the impending sale the claims of certain creditors of the insolvent corporation, *Page 376 
and under an order made in that suit, the property was sold by the receiver. The question is: How should the proceeds be distributed?
The judgment debtor invested $2,000 in the land. The Middlesex Roadside Rest, Incorporated, spent $8,000 in the improvements, all contributed by the creditors, who furnished work and materials toward the grading and the erection of the buildings, and who, through the receiver, are seeking a recovery of a share of the proceeds.
It would appear from Vice-Chancellor Bigelow's opinion (unreported, docket 87, page 606), in the suit to set aside the conveyance, that the conveyance to the insolvent company was but constructively fraudulent, one which rendered the grantor insolvent and the conveyance voidable under the statute, on that ground. P.L. 1919 p. 500. However, if there was intentional fraud, by Cherish, there is no proof that the grantee, the Middlesex Roadside Rest, Incorporated, was in pari delicto; and if there was, its innocent creditors should not suffer; they are not to be penalized and a court of equity should not withhold relief because of the iniquity of their debtor. In the circumstances, all that the judgment creditor fairly can ask, and all that it is entitled to, is that which it would have had had not the fraudulent conveyance been made. The value of improvements equitably enure to the creditors whose funds produced them. The judgment creditors cannot be enriched at their expense. This equitable course was adopted in favor of an innocent grantee in Borden v. Doughty, 42 N.J. Eq. 314, and extended to creditors of a fraudulent grantee in Hull v.Angster, 107 N.J. Eq. 454. It works justice to both parties; each gets his due. The receiver represented the creditors of the corporation, their equities fasten upon the value of improvements and their proceeds, and he is entitled to recover for them.Graham Button Co. v. Spielmann, 50 N.J. Eq. 120.
The judgment creditor of the grantor sets up that its right isres adjudicata by the decree in the cause setting aside the conveyance as fraudulent. As between the parties to that suit, without more, that is true, but the creditors of the insolvent company were not parties, nor was the receiver. Had *Page 377 
they been, there can be little doubt but that the vice-chancellor would have recognized their equities and imposed them as we are doing by this bill, which is their first opportunity to assert them. He was influenced to pass them by, as his opinion shows, only because the creditors or their representatives were not before him and the issue was not raised. Though the insolvent corporation is bound by the decree in that case, its creditors, as to their intervening equities, are not. This is not a case where equity turns a deaf ear to a wrongdoer, as in Kaplan v.Heiles, 107 N.J. Eq. 443, where it refused help to a fraudulent grantee, actively participating in the fraud.
The cases of Couse v. Columbia Powder Manufacturing Co.,33 Atl. Rep. 297, and Richardson v. Gerli, 54 Atl. Rep. 438, cited by the judgment creditor's counsel, do not involve equities such as we are here dealing with. In each of these cases the question was whether the judgment creditor of a fraudulent grantee occupied the position of a bona fide purchaser under the statute, as against a judgment creditor of the fraudulent grantor, and it was held that he did not.
The fund in the receiver's hands will be distributed in proportion to the contributions made by the grantor and the creditors of grantee. *Page 378